IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

TRAVIS R. NORWOOD,

      Plaintiff,

v.

                                                  Case No. 2:20-cv-00350
                                                  (Consolidated with
                                                  Case No. 2:20-cv-00299)

BETSY C. JIVIDEN, DONALD F. AMES,
JOHNNY WILSON, and TAMI MCGRAW,

      Defendants.

**PROPOSED FINDINGS AND RECOMMENDATION**

      This matter is assigned to the Honorable Thomas E. Johnston, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). This matter is proceeding on Plaintiff's initial complaint (ECF No. 4). Pending before the court are Defendants' Motion to Dismiss (ECF No. 41) and Plaintiff's Motion to Amend Complaint (ECF No. 68), to which he has attached a proposed amended complaint (ECF No. 68-1).

I.    *PLAINTIFF'S ALLEGATIONS AND RELEVANT PROCEDURAL HISTORY*

      Plaintiff's initial complaint, which was filed on May 19, 2020, alleges claims concerning various conditions of confinement in administrative segregation ("ad-seg") at the Mount Olive Correctional Complex ("MOCC"). The remaining Defendants include Betsy Jividen (now former Commissioner of the West Virginia Division of Corrections and Rehabilitation ("WVDCR")); Donald Ames (Superintendent of MOCC; Johnny

Wilson (a Correctional Officer); and Tami McGraw (a Correctional Counselor).[1]  Each Defendant is sued in both his or her individual and official capacities.  (ECF No. 4 at 6-8).

Plaintiff's claims largely allege that his conditions of confinement do not comply with state regulations concerning minimum standards for correctional facilities in West Virginia, as well as various WVDCR policies and procedures.  It is clear, however, that violations of state law, standing alone, do not give rise to federal constitutional violations. "If there is no violation of a federal right, there is no basis for a section 1983 action . . . ." *Clark v. Link*, 855 F.2d 156, 161 (4th Cir. 1988); *see also Love v. Peppersack*, 47 F.3d 120, 124 n. 5 (4th Cir. 1995) ("violations of state law are not cognizable under § 1983."); *Gantt v. Whitaker*, 57 F. App'x 141, 146 (4th Cir. 2003) (declaring that "§ 1983 does not provide redress for violations of state law" (citing *White v. Chambliss*, 112 F.3d 731, 738 (4th Cir. 1997))); *Keeler v. Pea*, 782 F. Supp. 42, 44 (D.S.C. 1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983)  Rather, Plaintiff must demonstrate that the identified conditions constitute conduct sufficiently serious to violate a specific federal constitutional right. Here, Plaintiff alleges that his conditions of confinement violate his rights under the First, Eighth, and Fourteenth Amendments.[2]

### A.    Claims in Plaintiff's initial complaint.

The initial complaint alleges that Plaintiff was being housed in ad-seg on the Quilliams 2 ("Q-2") unit at MOCC and was required to complete the "Quality of Life"

---

[1]  The presiding District Judge previously dismissed all claims against Scott Conrath, Keefe Commissary Network, Daniel Conn, and Wexford Health Sources, Inc.  (ECF No. 65).
[2]  Plaintiff also alleges that Defendants' conduct violated the Fifth Amendment.  The undersigned notes, however, that the Fifth Amendment due process clause only applies to conduct by federal officials and is, thus, not applicable here.  Accordingly, in addressing Plaintiff's due process claims, the Court will analyze the same only under the Fourteenth Amendment.

("QOL") program, which he alleges takes a minimum of 12 months to complete. (ECF No. 4 at 8-9). The complaint alleges a litany of allegedly improper restrictions and conditions of confinement on ad-seg inmates, which the undersigned will address in turn.

        1.      Claims concerning lack of showers and exercise.

The initial complaint first alleges:

> Inmates housed on Q-2 are locked down in their cells twenty four (24) hours a day. The only exceptions being one (1) hour of rec five days per week, and three (3) showers per week[] [m]ost weeks, but some weeks less than five (5) recs per week and less than three (3) showers per week.

(*Id.* at 9). The initial complaint specifically alleges that, from February 27, 2020 until March 5, 2020, Plaintiff was not allowed to shower or exercise "due to staffing concerns," and it further contends that, from March 1 to March 7, 2020, Plaintiff was only permitted two showers. (*Id.* at 9-10). The initial complaint further claims:

> MOCC staff have what they call "72 hour lockdown" which is a locked in you[r] cell for seventy two (72) hours, punishment for minor rule violations. The problem with the 72 hour lockdown for inmates in ad-seg is it forces them to go extremely long periods of time without showers or exercise. MOCC staff do not have make up showers or rec if the 72 hour lockdown caused the inmate to miss shower or rec cycle.

(*Id.* at 9). Plaintiff further claims that these conditions violate the state's minimum standards for correctional facilities, which state that "inmates in segregation shall receive a minimum of one hour per day, seven days per week, of outdoor exercise." (*Id.*)

        2.      Law library deficiencies.

Plaintiff's initial complaint also alleges that his confinement in ad-seg has denied him in person access to MOCC's law library and that other policies and practices surrounding access to legal materials are insufficient and violate his right to access the courts under the First and Fourteenth Amendments. (ECF No. 4 at 10-13). Plaintiff specifically claims that MOCC Operational Procedure 324 ("OP 324") does not permit ad-

seg inmates in-person access to the law library, but, instead, requires them to complete a written "legal request form" and have copies of legal materials delivered to them in their segregation cell.  (ECF No. 4 at 10-11).  Plaintiff further alleges that the state minimum standards provide that ad-seg inmates "shall have access to legal materials at least three times per week," and that the policy directive states that such deliveries will be made on Monday, Wednesday, and Friday, excluding holidays, but staff frequently fail to adhere to that schedule.  (*Id.*)

Plaintiff also complains about the law library charging 15 cents per page for photocopies of legal materials (which is assessed if the inmate does not return the copies within three days of their delivery).  Plaintiff further contends that this practice violates WVDCR Policy Directive 329.00, which at the time the complaint was filed, stated as follows:

> Each institution/facility/center shall provide copy making equipment and materials for the purpose of reproducing papers, motions, briefs, petitions, or other legal action which are to be filed with any court of proper jurisdiction.

 (*Id.* at 11).  Plaintiff suggests that this policy directive requires inmates to receive free legal copies, which (as explained below) is not true or constitutionally required.  Plaintiff further alleges that the failure to adhere to the three-days-a-week pick-up and delivery schedule causes inmates to be unnecessarily charged "hundreds of dollars" for copies that would have otherwise been returned within the three-day time period.  (*Id.* at 11-12).  Plaintiff contends that he "has made Defendants Ames and Jividen aware of the discrepancies between WVDCR's Policy Directive 329.00 and MOCC's law library's actions" through the inmate grievance process.  (*Id.* at 11).

4

Plaintiff also alleges that he was repeatedly denied the assistance of a legal aide from MOCC's legal aide assistance program to help prepare his state habeas petition "because he is not 'illiterate' or 'mentally challenged.'" (*Id.* at 12).  However, he provides no specific facts concerning when this happened or who denied his requests.

Plaintiff further claims that the law library staff "screens what information it will sell to Plaintiff." (*Id.*)  Specifically, Plaintiff alleges that, after he had ordered and been provided one page of a book called "Adult Correctional Institutions," when he attempted to subsequently tried to order the first 50 pages of the book, he was then told that it was "not available thru library." (*Id.*)  Plaintiff reiterates that he has made Ames and Jividen aware of these various deficiencies through the grievance process.  (*Id.* at 11-12).

### 3.    Claims against Wilson and McGraw.

Plaintiff's initial complaint also makes allegations concerning specific conduct by Defendants Wilson and McGraw.  Specifically, Plaintiff alleges that McGraw, as the Q-2 Counselor, was responsible for Q-2 inmate requests, including law library requests.  (*Id.* at 13).  Plaintiff further alleges that McGraw "would sometimes hold Plaintiff's legal request forms for weeks before submitting them to the law library.  Adding weeks to an already slow process." (*Id.*)

Plaintiff also claims that both McGraw and Wilson would "sometimes lose, disregard, or throw away Plaintiff's mail[,] including Plaintiff's inmate grievances, while he was trying to seek institutional remedies for their misconduct." (*Id.* at 14).  Plaintiff further alleges that, in December of 2019, he ordered two legal books from outside sources,[3] but when they were delivered, McGraw refused to give the books to him.  (*Id.*)

---

[3] The books allegedly ordered by Plaintiff were "Michie's West Virginia Code Annotated State Court Rules" which he had allegedly ordered from the Appalachian Prison Book Project in Morgantown, West Virginia,

Plaintiff further contends that McGraw and Wilson lied to him, claiming to rely on MOCC Operational Procedure 403 ("OP 403"), which places a limit of six books at a time that an inmate may possess in his cell. Plaintiff claims that McGraw and Wilson told him that he had to return nine books (which he claims were no longer in his possession) before he could receive these new books. (*Id*. at 15). Plaintiff further claims that, despite not having more than six books in his cell, he never received these two legal books and alleges that this denial of his personal property violated his Fourteenth Amendment rights. (*Id*. at 14-15). He further claims that Defendants denied him these materials to stop him from seeking judicial relief, specifically in a civil action filed in the Circuit Court of Fayette County, West Virginia concerning his conditions of confinement. (*Id*. at 14-15). Once again, Plaintiff alleges that he made Ames and Jividen aware of these issues through the grievance process. (*Id*. at 14).

Plaintiff also claims that, on March 13, 2020, his neighbor flooded his cell, causing contaminated water to flow into Plaintiff's cell as well. Plaintiff further claims that Wilson responded to assist the other inmate with a shower and having his cell cleaned and mopped. However, Plaintiff claims that when he asked for assistance or cleaning materials to clean up his cell, too, Wilson told him that he "might" let Plaintiff clean his cell, but he never returned with any cleaning materials. (*Id*. at 19). Plaintiff further alleges that, when he tried to clean the cell himself, he slipped and fell, hurting his right knee and leg, and was forced to lay in pain in raw sewage. (*Id*. at 19-20). Plaintiff further alleges that he informed Ames and Jividen about Wilson's negligence through the grievance process. (*Id*. at 19).

---

and "The Jailhouse Lawyer's Manual," which he had allegedly ordered from the National Lawyers' Guild in New York, New York. (ECF No. 4 at 14, ¶ 28).

4.    Alleged tampering with grievances.

Finally, Plaintiff's initial complaint alleges that the "Q-2 unit team (which included Wilson and McGraw) and "the WVDCR" (construed to be Ames and Jividen) also "conspire[d] to stop inmates from seeking judicial relief by implementing pitfalls of altered inmate grievances." (*Id.* at 20).  Specifically, Plaintiff claims that WVDCR officials "altered" the standard grievance form by removing the line indicating the date when an inmate appeals the grievance to the Commissioner (the third and final level of the grievance process).  (*Id.*)  Plaintiff claims that this change allows WVDCR officials to reject or deny grievances as untimely if the inmate does not add the date in that section on his or her own.  (*Id.*)

Plaintiff further claims that "the totality of the foregoing actions caused [his] habeas corpus case, Case No. 19-C-130 in the Circuit Court of Greenbrier County,[4] as well as a civil rights action in the Circuit Court of Fayette County, Case No. 19-C-151, to be dismissed.  (*Id.* at 20).

5.    Counts in initial complaint.

In Count One of the initial complaint, Plaintiff alleges that Jividen and Ames negligently failed to properly supervise and exercise control over Wilson and McGraw, whom he further asserts failed to perform their duties and committed a pattern and practice of constitutional violations which proximately caused injury to Plaintiff.  (*Id.* at 21).  In Count Two of the complaint, Plaintiff alleges that these various conditions of confinement violated his Eighth and Fourteenth Amendment rights.  (*Id.* at 22).

---

[4] According to one of Plaintiff's grievances, his first state court habeas petition was denied on December 31, 2019.  (ECF No. 4, Attach. 1 at 45, Ex. S)  It appears that Plaintiff subsequently filed a second state habeas petition, but the complaint documents do not contain further specific facts about the status of that matter.

In Count Three of the complaint, Plaintiff claims that Defendants' alleged misconduct "prevented him from prevailing in his habeas corpus" and denied him "access to the courts" in violation of his "First, Fifth, and Fourteenth Amendments."[5] (*Id.* at 23). In Count Four of the complaint, Plaintiff alleges that Defendants' conduct further deprived him of his personal property without due process of law, in violation of his Fourteenth Amendment rights. (*Id.* at 23). In Count Five of the complaint, Plaintiff alleges that the alleged "altering" of and tampering with his grievances denied him the right to seek redress of grievances under the First and Fourteenth Amendments. (*Id.* at 24). Plaintiff seeks declaratory and injunctive relief, as well as monetary damages from each Defendant. (*Id.* at 24-25).

**B.    Defendants' motion to dismiss.**

On March 23, 2022, Defendants filed the instant motion to dismiss (ECF No. 41) and memorandum of law in support thereof (ECF No. 42)., asserting several grounds for dismissal of Plaintiff's remaining claims. Defendants first assert that Plaintiff's complaint fails to state any plausible claim against them in their official capacities. (ECF No. 42 at 5-7). Defendants also contend that the complaint fails to state plausible violations of Plaintiff's First, Eighth, or Fourteenth Amendment rights against Defendants in their individual capacities. (*Id.* at 7-17). They further assert that they are entitled to qualified immunity. (*Id.* at 18-20).[6] Each of these assertions will be addressed *infra*.

---

[5] As noted above, the Fifth Amendment due process clause is inapplicable to Plaintiff's claims and will not be further addressed herein.
[6] Defendants' memorandum of law also argues that these Defendants are entitled to rely on the judgment of the medical providers with respect to his claims of deliberate indifference to his serious medical needs. However, those claims have been dismissed and will not be further addressed herein.

### C.   Plaintiff's response documents.

On April 6, 2022, Plaintiff filed a response in opposition to Defendants' motion to dismiss (ECF No. 53) and a "declaration" in support thereof (ECF No. 54).[7]   Plaintiff's response raises additional facts that post-date the filing of the initial complaint and it asserts for the first time, that the 72-hour lockdown used on ad-seg under OP 324 constitutes punishment without due process of law because it does not allow a hearing with an impartial hearing officer.  (ECF No. 54 at 2-3).

Plaintiff's response also reiterates his claim that McGraw tampered with his grievances, but further asserts a new claim that WVDCR Policy Directive 335.00, which governs the administrative grievance process, is "intentionally vague" and "overly restrictive." (*Id.* at 6-8).  Plaintiff's response again addresses his claim that Defendants denied him access to the courts, but in doing so, he relies on new facts that allegedly occurred more than a year after he filed his initial complaint. (*Id.* at 3-5).

Specifically, Plaintiff contends that, on October 14, 2021, he attempted to mail a pro se motion related to his second state habeas petition to the Circuit Court of Greenbrier County and the Greenbrier County Prosecuting Attorney, but the mail was returned to the prison because it was incorrectly addressed.  Plaintiff claims that someone at the prison (although he does not identify whether it was any of the current defendants) tampered with the mail and changed the address on the envelopes after he had submitted them for mailing.  Plaintiff does not allege whether the failure to deliver this mail affected the

---

[7] The "response" document (ECF No. 53) largely focuses on Plaintiff's claim that Defendants did not timely file their responsive pleading and were allegedly in default.   However, Plaintiff's default motion was subsequently found to be without merit and was denied.  (ECF No. 67).  Plaintiff's "declaration" document (ECF No. 54), on the other hand, contains his substantive arguments in opposition to Defendants' motion to dismiss and on the merits of his claims.  Accordingly, the undersigned will refer to the "declaration" as Plaintiff's response to the motion to dismiss (hereinafter "response").

outcome of his second habeas proceeding.  While he asserts that he lost a habeas corpus

case, he provides no detailed facts concerning the same.  (*Id.*)  His response asserts in

pertinent part:

> The Prison Defendants and their subordinates fraud me out of the basic
> necessities of regular showers and exercise by calling them privileges.
> Commit felonious mail crimes that have detrimental effects on my legal
> endeavors.  Then Defendants Jividen and Ames attempt to cover up the
> misdeeds with a deficient grievance policy that allows for unjustifiable
> grievance rejections and incoherent responses to irrelevant matters when I
> appeal the rejection.

(*Id.* at 8).  Plaintiff further contends that Defendants should not be entitled to qualified

immunity.  (*Id.*)

### D.   Plaintiff's motion to amend complaint.

Although Defendants did not file a reply brief, their motion to dismiss was fully

briefed and ripe for resolution.  However, over ten months later, on February 13, 2023,

Plaintiff filed the pending motion to amend complaint (ECF No. 68), with a proposed

amended complaint (ECF No. 68-1) attached thereto.  The proposed amended complaint

removes all the allegations against the previously dismissed defendants.  It also repeats

most of the allegations contained in the initial complaint, but, like Plaintiff's response to

the motion to dismiss, it adds facts that post-date those in the initial complaint, some as

late as September of 2022.  Plaintiff also adds new claims concerning violations of MOCC

OP 324 (concerning the QOL program) and OP 319 (concerning the seizure of personal

property from inmates placed on punitive status or lockdown), as wells as challenges to

WVDCR Policy Directives ("PD") 329.00 and 335.00, which were not clearly articulated

or even contemplated by the initial complaint.  The undersigned will discuss each of these

claims as necessary *infra*.

## II.   STANDARDS OF REVIEW

### A.   Motions to dismiss.

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).  However, to withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).  A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant] statute" will survive a motion to dismiss.  *Id*. at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.  This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief."  *Id*.  Review of the complaint is "a context-specific

11

task that requires [this Court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted). This Court construes a *pro se* plaintiff's allegations "liberally," but the complaint must nonetheless "contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016).

### B.     Motions to amend complaint.

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that, after the filing of a responsive pleading, an amended complaint may not be filed without the court's leave, and that leave shall be granted "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has held that:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previous allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, *etc.* – the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

As acknowledged by the United States Court of Appeals for the Fourth Circuit, however, leave to amend is discretionary and should be denied when delay is coupled with prejudice, bad faith, or futility. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (citing *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). An

amendment is futile if the proposed claim would not withstand a motion to dismiss. *Perkins v. United States*, 55 F.3d 910, 947 (4th Cir. 1995).   Accordingly, Plaintiff's proposed amendments must allege "enough facts to state a claim that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).

### III.   DISCUSSION

### A.   Plaintiff's complaint and proposed amended complaint fail to state a plausible claim for relief against Defendants in their official capacities.

As asserted by Defendants' motion, Plaintiff's complaint documents fail to state a plausible claim against any of the Defendants in their official capacities.   Plaintiff has not disputed this argument.   Plaintiff claims allege that Defendants' conduct violated his rights under the First, Eighth, and Fourteenth Amendments.   The vehicle for such a claim is section 1983 of Title 42 of the United States Code, which provides in pertinent part:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

42 U.S.C. § 1983.

While not in itself a source of substantive rights, section 1983 provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).   To successfully establish a section 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a <u>person</u> acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v.*

*Atkins*, 487 U.S. 42, 48 (1988)) [Emphasis added]; *see also Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691 (1978).

As noted by Defendants, the Supreme Court of the United States has held that "neither a State nor its officials acting in their official capacities are 'persons' under §1983." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 60, 71 (1989) (Claims under 42 U.S.C. § 1983 are specifically directed at "persons"). Thus, the claims against Defendants Jividen, Ames, Wilson, and McGraw in their official capacities fail as a matter of law.

Furthermore, pursuant to the Eleventh Amendment to the United States Constitution, the power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a citizen against his or her own state. *Hans v. Louisiana*, 134 U.S. 1, 9 (1980). Thus, the Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties seeking to impose monetary liability upon a State or State officials, which may be paid from public funds in the state treasury. *Quern v. Jordan*, 440 U.S. 332, 337 (1979). Absent consent or waiver by statute, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984). These narrow exceptions to Eleventh Amendment immunity do not exist in this case. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248-49 (4th Cir. 2012).

As addressed *infra*, Plaintiff's complaint documents fail to state any plausible federal constitutional claim. Consequently, even to the extent that the Eleventh Amendment provides an exception for official capacity claims for injunctive relief, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff has not established a right to such relief herein.

14

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendants Jividen, Ames, Wilson, and McGraw, in their official capacities, are not persons who can be sued under § 1983 and are further immune from suit under the Eleventh Amendment.

### B. The complaint and proposed amended complaint fail to state any plausible constitutional claim grounded in infrequent showers and exercise.

Count Two of the complaint and proposed amended complaint makes a blanket assertion that the various conditions of confinement about which Plaintiff complains deprived him of rights under the Eighth and Fourteenth Amendments, "including his right against cruel and unusual punishment." (ECF No. 4 at 22; ECF No. 68-1 at 33-34). In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" This is a low standard. The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id.* at 833.

To sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official must have a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health or safety." *Id.* at 834. (Citations omitted.) The Supreme Court rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to

inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id*. at 837.

As noted above, Plaintiff first alleges that he has been periodically denied regular showers and daily recreation. Defendants, however, assert that the law is clear that "only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim." *Shakka v. Smith*, 71 F.3d 162 (4th Circ. 1995) (citing *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1993). Defendants' motion further asserts that "the Complaint does not include any allegation that these claimed conditions, if they existed, caused Plaintiff 'serious or significant physical or emotional injury' or that a 'substantial risk of such serious harm' existed to Plaintiff." (ECF No. 42 at 10). Defendants further contend:

> Taking the claims, even collectively, Plaintiff does not allege conditions on which he can prevail against the Jail Defendants. The focus of the allegations related to a few days without a shower is void of any explanation of how the conditions caused serious or significant physical or emotional injury to the Plaintiff. At most, Plaintiff alleges conditions that would be annoying. [Footnote omitted]. Next, claims of limited showers and recreation time do not satisfy the objective prong set forth in *Farmer v. Brennan*. [Footnote omitted]. To meet the objective standard, Plaintiff must allege a serious condition(s) caused by lack of showering or limited recreation that proximately caused significant physical or emotional injury. [Footnote omitted]. Without these required allegations, Plaintiff has failed to state an 8th Amendment violation.

(*Id*. at 10-11). Defendants further emphasize that Plaintiff has not alleged that he suffered any significant physical injury stemming from these alleged conditions. (*Id*. at 11-12). Consequently, Defendants assert that Plaintiff cannot satisfy the objective prong of the deliberate indifference standard, and further fails to satisfy 42 U.S.C. § 1997e(e), which provides as follows:

16

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act.

(*Id.*)

Defendants also assert that Plaintiff has failed to plead sufficient facts to satisfy the subjective deliberate indifference prong.  (*Id.* at 12-13).  Their memorandum further states:

Deliberate indifference requires a showing that the official was subjectively aware of a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (U.S. 1994).  In order to possess this level of culpability, "the official must be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id.*  To be liable, the prison officials must actually know of and disregard the risk.  *Farmer*, 511 U.S. at 837.  The Fourth Circuit has characterized the deliberate indifference standard as an "exacting" one. *Lightsey*, 775 F.3d at 178." *Jones v. Chapman*, Civil Action No. ELH-14-2627, 2017 U.S. Dist. LEXIS 87907, at *87-91 (D. Md. June 7, 2017).  Deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness . . . ." *Lightsey*, 775 F.3d at 178; *see also Scinto*, 841 F.3d at 225; *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986)." *Id.* "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . ." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999).  Clearly, Count I for negligence, and Count II for section 1983 liability fails to meet the high standard.  In addition, Plaintiff has failed to make any allegations exhibiting knowledge on the part of any supervisory Defendant.  As such, these Defendants must be dismissed.

(*Id.* at 13).

Plaintiff's documents do not contain factual allegations that satisfy the objective or subjective prongs of the Eighth Amendment standard.  At best, Plaintiff's asserts that Defendants have not acted in accordance with state policies and regulations concerning the frequency of inmate showers and recreation, and that their interpretation of the same as a "privilege," rather than a right, is improper.  (ECF No. 54 at 3; ECF No. 68-1 at 4-6).

But, as noted previously, violations of state regulations and policies, alone, do not rise to the level of a constitutional violation.

Plaintiff specifically alleges that, between February 27-March 5, 2020, he went six days without a shower due to "staffing concerns." (ECF No. 4 at 9-10; ECF No. 68-1 at 6). His proposed amended complaint further alleges that in January of 2022 (two years later), he received five showers in 23 days. (ECF No. 68-1 at 6). In his proposed amended complaint, Plaintiff also attempts to satisfy the physical injury element by alleging that the denial of three showers per week "causes [him] painful skin rashes on and around [his] genitals." (ECF No. 68-1 at 6). The undersigned proposes, however, that the presiding District Judge **FIND** that, without more, this conclusory allegation fails to satisfy the objective prong of the deliberate indifference standard. *See Rivera v. Mathena*, 795 F. App'x 169, 176–77 (4th Cir. 2019) (holding the spread of a rash on an inmate's genitals did not rise to the level of a serious medical need for Eighth Amendment purposes).

Numerous federal courts have held that conditions like those complained of by Plaintiff are insufficient to give rise to an Eighth Amendment violation. *See, e.g., Davenport v. DeRobertis*, 844 F.2d 1310, 1316–17 (7th Cir. 1988) (holding that allowing inmates in a segregation unit only one shower per week was "constitutionally sufficient" and did not constitute an Eighth Amendment violation); *Graham v. Stallard*, No. 7:17-cv-00035, 2020 WL 5778790, at *15 (W.D. Va. Sept. 28, 2020), *dismissed*, No. 20-7533, 2021 WL 4932223 (4th Cir. Apr. 29, 2021) (Eighth Amendment claim grounded in infrequent showers in segregation failed to state claim); *Johnson v. Fields*, No. 2:14-cv-38-FDW, 2017 WL 5505991, at *10 (W.D.N.C. Nov. 16, 2017) ("Plaintiff's claim that he was denied a shower and clean clothes for twelve days is insufficient as a matter of law to

maintain an Eighth Amendment claim."); *Blackburn v. South Carolina,* No. 0:06-2011-PMD-BM, 2009 WL 632542, at *17 (D.S.C. Mar. 10, 2009) (concluding that ten days without a shower when first placed in a segregation unit, followed by an average of one shower per week thereafter, was not a constitutional deprivation); se*e also Wiley v. Ky. Dep't of Corr.*, No. 11-97-HRW, 2012 WL 5878678, at *4 (E.D. Ky. Nov. 21, 2012) (finding that lack of running water, clean clothes, and linens for fourteen-day period did not state Eighth Amendment claim); *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (holding that allegations by inmate of denial of toilet paper, soap, running water, or the ability to shower for six days did not violate the Eighth Amendment); *Metcalf v. Veita*, No. 97-1691, 1998 WL 476254, at *2 (6th Cir. Aug. 3, 1998) (holding that an eight-day denial of showers did not result in serious pain or offend contemporary standards of decency under the Eighth Amendment); *but see Rivera, supra,* 795 F. App'x at 174-75 (denial of showers for almost eight weeks and recreation for nearly two months were "sufficiently lengthy and severe" to give rise to plausible Eighth Amendment claim).

Plaintiff has not demonstrated any serious or significant physical injury resulting from his periodic, short-term denial of showers.  Consistent with the foregoing cases, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff has failed to state a claim under the Eighth Amendment as to the lack of showers.

The same is true with Plaintiff's claim concerning the alleged denial of recreation. Plaintiff claims that Defendants have not complied with state standards suggesting one hour of daily recreation and further asserts that OP 324, providing for five days of recreation per week, is "insufficient" and "unconstitutional."  (ECF No. 54 at 2-3; ECF No. 68-1 at 4-6).  Plaintiff further contends that "it is very common that [he] [does] not even get the opportunity for the alleged five (5) days of rec per week."  (ECF No. 68-1 at 5).

"It may generally be considered that complete deprivation of exercise for an extended period of time violates Eighth [A]mendment prohibitions against cruel and unusual punishment." *Mitchell v. Rice*, 954 F.2d 187, 191 (4th Cir. 1992) (footnote omitted); *see also Rivera, supra*, 759 F. App'x at 174-75; *Rucker v. Stirling*, No. 1:19-cv-310-MGL-SVH, 2020 WL 5984435, at *5 (D.S.C. Mar. 6, 2020), *report and recommendation adopted*, 2020 WL 4381975 (D.S.C. July 31, 2020). However, "the Constitution fails to mandate outdoor exercise when alternative avenues for exercise exist." *Goss v. Kendell*, No. 2:20-cv-00949-MGL, 2022 WL 855549, at *3 (D.S.C. Mar. 23, 2022) (citing *Norbert v. Cty. & Cnty. of San Francisco*, 10 F.4th 918, 929–34 (9th Cir. 2021) (surveying cases and finding the Constitution fails to require outdoor exercise when other opportunities for physical exercise are available). The Fourth Circuit has further recognized that the inherent nature of a restricted housing unit, as opposed to general population, "necessitates a more stringent Eighth Amendment analysis when an inmate complains of his conditions of confinement." *Goss*, 2022 WL 855549 at *3 (citing *Taylor v. Rogers*, 781 F.2d 1047, 1050 (4th Cir. 1986) (segregated confinement requires more restrictive living features and the relinquishment of many features such as more generous physical recreation opportunities and facilities, and certain deprivations failed to give rise to an Eighth Amendment violation).

In considering the totality of the circumstances surrounding the denial of exercise, we look at the "overall duration of incarceration, the length of time for which prisoners are locked in their cells each day, and the practical opportunities for the institution to provide prisoners with increased exercise opportunities." *Mitchell,* 954 F.2d at 191 (alteration and internal quotation marks omitted). To establish an Eighth Amendment claim, however, not only must an inmate have suffered a serious deprivation, but he must

also show "a serious or significant physical or emotional injury resulting from the challenged conditions, or substantial risk thereof." *De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013) (internal quotation marks omitted); *see also Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995); *Lyles v. Stirling*, 844 F. App'x 651, 653 (4th Cir. 2021).

Plaintiff does not allege any physical or mental injury resulting from allegedly insufficient recreation time.  Without such an allegation, he does not state a viable Eighth Amendment claim.  *See Vargas v. Janow*, No. 3:21-cv-00574, 2021 WL 5084579, at *7 (M.D. Tenn. Nov. 1, 2021).  Even taking Plaintiff's allegations as true, he has not adequately alleged that he has been denied sufficient opportunities for exercise or that he has suffered any actual injury from his more limited exercise opportunities.

### C.     The complaint and proposed amended complaint fail to state any plausible constitutional claim arising out of use of a 72-hour lockdown.

Plaintiff's complaint, response to the motion to dismiss, and proposed amended complaint also challenge the use of a 72-hour lockdown in the ad-seg units.  Plaintiff alleges that OP 324 grants authority to the segregation commander to "place any inmate on the QOL program on seventy-two (72) hour lockdown, which is 72 hours without recreation ("rec") or showers."  (ECF No. 68-1 at 6-7; ECF No. 4 at 9).  Plaintiff claims that this is allegedly done for an inmate's inappropriate behavior or minor rule violations but is not required to result in the filing of a disciplinary rule violation report, and, consequently, "an inmate has no due process rights in the 72-hour lockdown punishment."  (*Id.* at 7).  Plaintiff further asserts that the inmate "is just automatically guilty and punished by being placed on 72-hours lockdown status."  (ECF No. 68-1 at 7; ECF No. 54 at 3).  Plaintiff also alleges that Defendant Wilson has improperly used it to

retaliate against Plaintiff for using the inmate grievance process.  (ECF No. 54 at 3; ECF No. 68-1 at 7).

Defendants' motion did not specifically address this claim because it was subsequently raised in Plaintiff's response brief and his proposed amended complaint. Nonetheless, to establish a due process violation, Plaintiff must have been deprived of life, liberty, or property. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  In the prison context, the Court determines whether a protected interest is implicated and, thus, whether the Due Process Clause attaches, both by examining the expectations created by state regulations and the nature of the sanctions imposed.  *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995).  Due process concerns are not implicated unless the imposed sanction presents an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at 484; *Prieto v. Clarke*, 780 F.3d 245, 249 (4th Cir. 2015).

Defendants' use of a 72-hour lockdown period did not impose such a hardship on Plaintiff as to infringe on a protected liberty interest.  *Sandin*, 515 U.S. at 486 (placement in segregated confinement for 30 days did not infringe on protected liberty interest); *see also Rust v. Grammer*, 858 F.2d 411, 413 (8th Cir. 1988) (lockdown of maximum security cells in state prison to regain control of a disruptive situation did not violate the due process clause).  Indeed, other federal courts have concluded that limited periods of time in such confinement do not amount to constitutional violations.  *See, e.g., O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 83-84 (8th Cir. 1996) (three days without underwear, blankets, mattress, exercise, and visits not a constitutional violation); *Williams v. Delo*, 49 F.3d 442, 444 (8th Cir. 1995) (four days without clothes, mattress, running water, bedding, mail, hot food, and hygienic supplies not a constitutional

violation); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (eleven days in an unsanitary cell did not amount to a constitutional violation).

Finally, in his proposed amended complaint, Plaintiff makes a singular, blanket allegation that Defendant Wilson repeatedly placed him on 72-hour lockdown in retaliation for utilizing the inmate grievance process.  (ECF No. 68-1 at 7).  To the extent that this stray unsupported allegation can be read to be asserting a First Amendment retaliation claim, the undersigned proposes that it is insufficiently pled.  While an inmate has a clearly established right to be free from retaliation for filing grievances, *see Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017); *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533 (4th Cir. 2017), Plaintiff has not pled sufficient facts to establish a causal connection between his filing of any specific grievance and his alleged placement on 72 hour lockdown.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's complaint documents fail to state a plausible First Amendment claim on this basis.

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff has not adequately stated a plausible constitutional claim grounded in Defendants' use of a 72-hour lockdown.  He has not sufficiently established that such placement is either cruel and unusual punishment that would violate the Eighth Amendment or that it violated a protected liberty interest necessary to give rise to any due process protections under the Fourteenth Amendment.  Thus, to the extent that Count Four of Plaintiff's proposed amended complaint appears to allege a due process claim on this basis, it fails to state a claim upon which relief can be granted.

**D.    The complaint and proposed amended complaint fail to state a plausible Fourteenth Amendment due process claim or other constitutional claim grounded in denial of his personal property.**

In Count Four of his complaint and proposed amended complaint, Plaintiff alleges that "stealing his 'State Court Rules' book" constitutes a deprivation of property giving rise to a Fourteenth Amendment due process violation.  (ECF No. 4 at 23; ECF No. 68-1 at 35).  However, as noted by Defendants, that claim also fails as a matter of law because neither a negligent, nor an intentional, loss of Plaintiff's property gives rise to a due process claim here.  *See Daniels v. Williams*, 474 U.S. 327, 335-36 (1986) (negligent deprivation of property by a prison official does not implicate the Due Process Clause); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional deprivation of inmate property not actionable under federal Due Process Clause where state remedies are available). (ECF No. 42 at 16-17).

As addressed in *Hudson*, and as relevant here, "[a]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available."  468 U.S. at 533.  In addition to the internal administrative grievance procedures, which Plaintiff was required to exhaust before filing this lawsuit, West Virginia law authorizes civil tort causes of action to recover for personal property wrongfully withheld by another individual.  *See Goodman v. Ramey*, No. 2:12-cv-0439, 2012 WL 5966642, at *4 (S.D.W. Va. Nov. 29, 2012) (holding that an inmate failed to state a constitutional claim for the loss of his property when he could have challenged the taking "in a garden-variety tort claim in state court."); *see also Kidd v. Bradley*, 578 F. Supp. 275, 276-77 (N.D.W. Va. 1984).  State law also permits monetary recovery for lost or damaged personal property by filing a claim

24

against state agencies with the Legislative Claims Commission.  *See* W. Va. Code §§ 14-2-1 *et seq.*  Plaintiff has not demonstrated that he attempted to take advantage of any of these processes under state law and therefore he has not established that there is an absence of state processes under which he could attempt to recover for the loss of his property.  Consequently, the undersigned proposes that the presiding District Judge **FIND** that the complaint and proposed amended complaint fail to state a plausible Fourteenth Amendment claim against Defendants on this basis.

Plaintiff's proposed amended complaint also appears to assert an Eighth Amendment claim grounded in his inability to possess his personal property pursuant to MOCC OP 319.  (ECF No. 68-1 at 22-25).  OP 319 apparently prohibits inmates on punitive segregation or "loss of privileges" from possessing some of their personal property.  In Count Two of the proposed amended complaint, Plaintiff makes a blanket assertion that this policy constitutes cruel and unusual punishment.  (*Id.* at 34).  However, Plaintiff provides no further factual or legal support for this conclusory contention.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that this allegation fails to state a plausible claim for relief.

### E.   The complaint and proposed amended complaint fail to state a plausible constitutional claim grounded in denial of access to the courts or to otherwise redress grievances.

In Counts Three and Five of the complaint and proposed amended complaint, Plaintiff further claims that deficiencies in the law library and access to legal materials, along with Defendants' conduct in relation thereto, has violated his right to access the courts and petition the government to redress grievances under the First and Fourteenth Amendments.  (ECF No. 4 at 22-24; ECF No. 68-1 at 34-36).  His initial complaint alleges that the MOCC law library does not comply with the state standards calling for "access to

legal materials at least three times per week" and allegedly "free" copies of documents for court filings.  (ECF No. 4 at 10-12; ECF No. 68-1 at 8-12).  He further contends that ad-seg inmates are not allowed physical access to the law library, which will also not loan reference books to prisoners, forcing them to order copies of legal materials at 15 cents per page (which he also claims is cruel and unusual punishment in violation of the Eighth Amendment) and that spotty pickups and deliveries of such documents interferes with his ability to properly research his cases.  (*Id.*)  He further contends that he cannot obtain the assistance of a legal aide.  (*Id.*)

Additionally, Plaintiff alleges that Defendants McGraw and Wilson have tampered with his mail (particularly denying delivery of his two legal books ordered from outside sources and not timely delivering his in-house legal requests) and have also tampered with his inmate grievances in an effort to "stop [him] from seeking judicial relief."  (ECF No. 4 at 13-14; ECF No. 68-1 at 17).  He also contends that Defendants Jividen and Ames are aware of these issues through his grievances.  (ECF No. 4 at 12-13; ECF No. 68-1 at 9-10).

In *Bounds v. Smith*, 430 U.S. 817, 821 (1977), the Supreme Court held that prisoners have a constitutional right to access the courts meaningfully and effectively.  However, this obligation is not all-encompassing and does not "guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Lewis v. Casey*, 518 U.S. 343, 355 (1996).  In *Lewis*, the Court emphasized that "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance." *Id.* at 351; *see also Murphy v. Inmate Sys. Mgmt., Inc.*, No. 1:03-0170, 2008 WL 793631, at *10 (S.D.W. Va. Mar. 20, 2008) ("[P]risoners do not have a right per se to a law library or legal assistance.").

The *Lewis* Court emphasized that "prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." 518 U.S. at 351. The required tools are those needed by inmates "to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355.

As noted by Defendants, however, "[t]o establish a violation of this right, a prisoner-Plaintiff must plead and prove that he has not been "provided an opportunity to litigate a claim challenging [his] sentence or conditions of confinement in a court of law." *White v. Kautzky*, 494 F.3d 677, 679-80 (8th Cir. 2007) (citing *Murray v. Giarratano*, 492 U.S. 1, 11 n.6 (1989) and *Christopher v. Harbury*, 536 U.S. 403, 413 (2002). (ECF No. 28 at 6-7). Additionally, Plaintiff must show that he suffered an actual injury. *Strickler v. Waters*, 989 F.2d 1375, 1384 (4th Cir. 1993) (holding that a prisoner had a "basic requirement that he show specific harm or prejudice from the allegedly denied access"); *Weber v. Wood*, 986 F.2d 504 (8th Cir. 1993) ("an inmate must demonstrate that he suffered prejudice.")

To prove an actual injury, Plaintiff "must demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Harsfield v. Nichols*, 511 F.3d 826, 832 (8th Cir. 2008) (quotations omitted). This court and others have frequently dismissed denial of access claims where a plaintiff has failed to establish an actual injury. *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (recognizing that plaintiff bringing denial of access to courts claim must allege claim with specificity and identify an actual injury resulting from official conduct); *Michau v. Charleston Cty., S.C.*, 434 F.3d 725, 728

27

(4th Cir. 2006) (rejecting denial of access claim where complaint did "not specifically explain how [plaintiff] was injured by any limitations on his access to the law library.").

Defendants' motion to dismiss asserts:

> A review of the allegations of Plaintiff's complaint discloses that his contentions relating to the lack of law library access, the costs charged for copies, and related claims, do not raise a cognizable § 1983 claim because there are no allegations of any specific injury. His vague claim that his habeas corpus claim was denied is not sufficient as Plaintiff does not allege, for example, that a Petition was not timely filed, or that specific authority necessary was refused. Plaintiff must allege actual injury resulting from allegedly inadequate law library access (or his related claims) in order to state a claim under section 1983. *See Lewis v. Casey*, 518 U.S. at 351 (plaintiff must allege actual injury resulting from allegedly inadequate jail library in order to state a claim under section 1983); *Michau v. Charleston Cnty., S.C.*, 434 F.3d 725 (4th Cir. 2006) (in access to court claim, inmate must allege and show that he has suffered an actual injury or specific harm to his litigation efforts as a result of the defendant's actions); *Magee v. Waters*, 810 F.2d 451 (4th Cir. 1987) (actual injury required of city jail inmate who received books after delay and was allowed one hour of library time a week).

(ECF No. 42 at 14).

Plaintiff makes speculative and conclusory allegations that Defendants were responsible for his failure to succeed with his state habeas corpus petition and a separate state court civil rights case challenging his conditions of confinement. *See Strickler*, 989 F.2d at 1383 (vague, conclusory, and speculative allegations of potential success of habeas corpus petition do not establish the necessary "specific injury or prejudice to [] litigation.") His initial complaint makes a blanket statement that "the totality of the foregoing actions caused Plaintiff's habeas corpus, Case No. 10-C-130 in the Circuit Court of Greenbrier County, WV, as well as a Civil Action No. 19-C-151 in the Circuit Court of Fayette County, WV, to be dismissed." (ECF No. 4 at 20). However, he provides no additional facts concerning the timing and reasons for the dismissal of those legal

proceedings or in any way suggesting a causal connection between their dismissal and Plaintiff's access to specific legal materials.

Plaintiff's response to the motion to dismiss asserts that, on October 14, 2021, over a year after he filed his initial complaint, he attempted to mail items related to his <u>second</u> state habeas petition to the Circuit Court of Greenbrier County and the Greenbrier County Prosecuting Attorney, but the mail was returned to the prison because it was incorrectly addressed.  Plaintiff claims that someone at the prison (although he does not identify whether it was any of the current defendants) tampered with the mail and changed the address on the envelope.  However, he fails to identify what the mailings contained and whether the failure to deliver the same caused him any actual injury with respect to his habeas corpus proceedings.  Thus, he has failed to allege that he was unable to mail a specific required filing to the court and that such failure resulted in the dismissal of his habeas petition for that reason.  Additionally, Plaintiff's proposed amended complaint alleges that these same law library deficiencies, along with the deprivation of his legal books also caused his objections to the undersigned's Proposed Findings and Recommendations concerning the other motions to dismiss in this matter to be overruled and the motions to dismiss to be "erroneously granted" by the presiding District Judge. (ECF No. 68-1 at 24).

Nonetheless, Plaintiff has not alleged facts to demonstrate that a "non-frivolous" or "colorable" claim in his legal proceedings was frustrated or impeded because of the restrictions in access to legal materials or any specific conduct of Defendants. He merely speculates that the identified legal proceedings would not have been dismissed had he had greater access to legal materials.  Therefore, he has not sufficiently pled any actual

injury stemming from a denial of access to the courts and, thus, his complaint documents fail to state any plausible violation of the First or Fourteenth Amendments on this basis.

Likewise, Plaintiff has not sufficiently alleged a violation of his First or Fourteenth Amendment rights grounded in alleged tampering with his grievances or the alleged vagueness of the grievance procedures, as asserted in Count Five of his complaint and proposed amended complaint. (ECF No. 4 at 24; ECF No. 68-1 at 36). This specific ground for relief appears to be based upon Plaintiff's allegations that the line for indicating when an inmate appeals a grievance to the Commissioner was removed from the grievance form used as part of the WVDCR grievance process under Policy Directive 335.00. Plaintiff alleges that this action was taken to permit the Commissioner to deny grievances as untimely if an inmate does not add the date to the form himself. (ECF No. 4 at 20; ECF No. 68-1 at 27-28). This claim also appears to be grounded in Plaintiff's additional allegations in his proposed amended complaint that Policy Directive 335.00 does not clearly articulate the process for dealing with a rejected grievance and is otherwise confusing. (ECF No. 68-1 at 27-31). Additionally, this ground for relief appears to be based upon Plaintiff's allegation that Defendants McGraw and Wilson have tampered with grievances he has submitted by either not turning them in or not returning them. (ECF No. 4 at 14; ECF No. 68-1 at 17).

There is no constitutional right to a grievance process and prisons are not constitutionally required to provide a grievance system. *See Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). Likewise, inmates have no protected liberty interest in filing grievances. Thus, "insofar as [Plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures," his claim is frivolous and fails to state a claim upon which relief can be granted. *See Geiger v. Jowers*, 404

F.3d 371, 373-74 (5th Cir. 2005); *see also Adams v. Rice,* 40 F.3d 72, 75 (4th Cir. 1994)*;*

*Daye v. Rubenstein,* C/A No. 10-6938, 2011 WL 917248, at *2 (4th Cir. March 17, 2011)*;*

*Ashann-Ra v. Commonwealth of Virginia,* 112 F. Supp. 2d 559, 569 (W.D. Va. 2000)

("[A] prison official's failure to comply with the state's grievance procedure is not

actionable under § 1983.").  Accordingly, Plaintiff cannot state a plausible violation of his

due process rights on this basis.

Moreover, the alleged absence of an effective grievance procedure does not

absolutely preclude a plaintiff from suing in a federal district court.  *See Jones v. Bock*,

549 U.S. 199 (2007) (failure to exhaust is an affirmative defense and inmates are not

required to specially plead or demonstrate exhaustion in their complaints); *Anderson v.*

*XYZ Correctional Health Services*, 407 F.3d 674, 683 (4th Cir.2005) ("an inmate's failure

to exhaust administrative remedies is an affirmative defense to be pleaded and proven by

the defendant"); *see also Ross v. Blake*, 578 U.S. 632, 642 (2016) (Exhaustion

requirement is dependent upon the availability of administrative remedies).[8]

To the extent that Plaintiff is claiming that the alleged failure to process certain

grievances has denied him access to the courts, he has not sufficiently alleged any actual

injury to support such a claim.  Thus, there is no basis for a stand-alone due process claim

based upon Plaintiff's allegations that McGraw and Wilson may have tampered with and

never returned some of his grievances or his contention that WVDCR Policy Directive

335.00 does not clearly explain the rejection process.  Moreover, at bottom, Plaintiff has

---

[8]  In *Ross*, the Supreme Court held that "the exhaustion requirement hinges on the 'availability' of the administrative remedies.  An inmate . . . need not exhaust unavailable remedies."  *Id.*  The Court further defined "available" as "'capable of use' to obtain 'some relief for the action complained of.'"  (*Id.*, citing *Booth v. Churner*, 532 U.S. 731, 738 (2001)).  While Plaintiff might be able to argue that the grievance process was unavailable to him because of Defendants' conduct if an exhaustion defense were raised by Defendants), he has not presently alleged an actual injury to his pursuit of any legal claims resulting from Defendants' conduct that would be sufficient to state a plausible claim under the First Amendment.

not made any specific allegation that he has been denied the ability to pursue a colorable claim for relief in court because he had allegedly not properly exhausted a specific grievance. Nor has exhaustion been raised as an affirmative defense by Defendants herein. Therefore, the undersigned proposes that the presiding District Judge **FIND** that Counts Three and Five of Plaintiff's complaint fail to state plausible claims for relief against Defendants.

### F.    Plaintiff's claims against Jividen and Ames.

Plaintiff's allegations against Defendants Jividen and Ames are somewhat convoluted. On the one hand, in Count One of the complaint and the proposed amended complaint, Plaintiff appears to be alleging a state law negligence claim against them, grounded in negligent supervision. (ECF No. 4 at 21; ECF No. 68-1 at 33). However, in the same count, Plaintiff also appears to allege that Jividen and Ames allowed their subordinates (McGraw and Wilson) to engage in customs and practices of constitutional violations that allegedly caused Plaintiff injury. (*Id.*)

In *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), the Court held that supervisors may be liable for the actions of their subordinates where the supervisor, by his own conduct, was deliberately indifferent to, or tacitly authorized or approved prior constitutional violations. Such liability is not based on *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." 13 F.3d at 798 (*quoting Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)). In *Shaw*, the Fourth Circuit discussed the following elements necessary to establish a supervisor's liability under 42 U.S.C. § 1983:

1)   The supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;

2)   The supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and

3)   There was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injuries suffered by the plaintiff.

13 F.3d at 799.  However, in *Farmer*, *supra*, the Supreme Court clarified that a prison official's "actual subjective awareness" of an excessive risk of harm or safety was required to hold the official liable under the Eighth Amendment.  Thus, a prison official cannot be held liable for the failure to alleviate a risk that he should have perceived, but did not in fact perceive.  511 U.S. at 838.  As further noted in *Evans v. Chalmers*:

> [T]he Supreme Court explained in *Iqbal* that "a supervisor's mere knowledge" that his subordinates are engaged in unconstitutional conduct is insufficient to give rise to liability; instead a supervisor can only be held liable for "his or her own misconduct." [556 U.S. at 677.]

703 F.3d 636, 660-61 (4th Cir. 2013).  Thus, to hold a supervisory defendant liable, Plaintiff must allege facts that allow the court to draw a reasonable inference that the supervisor's own conduct permitted the constitutional violation to occur.  *Iqbal*, 556 U.S. at 677.  As an initial matter, as noted above, Plaintiff has not sufficiently alleged facts to demonstrate that Ames and Jividen had actual knowledge of a "pervasive and unreasonable risk of constitutional injury" and that they were deliberately indifferent thereto.  At best, Plaintiff alleges that he made these Defendants aware of each of his challenged conditions of confinement and alleged deficiencies in prison policies through the grievance process, which in and of itself is not sufficient to hold them liable herein. *See, e.g., Rygh v. Clifford,* No. 2:12-cv-07387, 2014 WL 1338544, at *18 (S.D.W. Va. Feb.

21, 2014), *report and recommendation adopted*, 2014 WL 1338547 (S.D.W. Va. Mar. 31, 2014); *Lowe v. Matheney*, No. 2:13-cv-22416, 2015 WL 5795867, at *9 (S.D.W. Va. Sept. 30, 2015) (supervisory liability claims alleging little more than supervisor's role in the denial of grievancess are insufficient to state any plausible claims for relief); *see also Larson v. Meek*, 240 F. App'x 777, 780 (10th Cir 2007) (inadequacy of allegations involving supervisory liability based on denial of grievances); *Ferris v. Jones*, No. 4:14-cv-454, 2015 WL 4668297, at *9 (N.D. Fla. Aug. 5, 2015) (granting a motion to dismiss for failure to state a claim of supervisory liability claims predicated on the denial of grievances).

As Plaintiff has not demonstrated any actual violation of his federal constitutional rights by the challenged conditions, there is no basis to find that Jividen or Ames were actually aware of a pervasive and unreasonable risk of harm to Plaintiff to which they were deliberately indifferent. Even taken in the light most favorable to Plaintiff, the facts in the complaint and proposed amended complaint concerning Jividen and Ames's conduct are conclusory and speculative and do not demonstrate actual or constructive knowledge of a pervasive risk of harm by them in order to establish supervisory liability. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's complaint and proposed amended complaint fail to state a plausible claim of supervisory liability against Jividen and Ames.

Moreover, to the extent that Plaintiff is, instead, asserting a state law negligence claim against Jividen and Ames grounded in negligent supervision, because all of Plaintiff's federal constitutional claims have been recommended for dismissal, the undersigned proposes that the presiding District Judge decline to assert supplemental jurisdiction over those state law claims pursuant to 28 U.S.C. § 1367(c).

**G.     Negligence claims against Wilson and McGraw.**

In Count One of the complaint and proposed amended complaint, Plaintiff also appears to allege negligence claims against Defendants Wilson and McGraw, claiming that they generally failed to perform their job duties, resulting in and proximately causing injury to Plaintiff.  (ECF No. 4 at 21; ECF No. 68-1 at 33).  Additionally, Plaintiff appears to also be asserting a specific negligence claim against Defendant Wilson arising out of his failure to assist Plaintiff with cleaning his cell on March 13, 2020, despite being aware that Plaintiff's cell had been flooded with sewer water.  (ECF No. 4 at 19; ECF No. 68-1 at 26-27).  Plaintiff further asserts that, after waiting several hours for Wilson or another staff member to bring him cleaning supplies, he attempted to clean his cell by hand and slipped and fell in the water and injured his right knee and leg as a result.  (*Id.*)  Defendants did not specifically address these negligence claims in their motion to dismiss.

Again, because dismissal of each of Plaintiff's federal constitutional claims has been recommended for dismissal, the undersigned proposes that the presiding District Judge decline to exercise supplemental jurisdiction over Plaintiff's state law negligence claims pursuant to 28 U.S.C. § 1367(c).

**H.     Qualified immunity.**

Defendants' motion to dismiss further asserts that Defendants are entitled to qualified immunity on all of Plaintiff's claim against them.  Qualified immunity "shields government officials from liability for civil damages provided their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Haze v. Harrison*, 961 F.3d 654, 660 (4th Cir. 2020); *Meyers v. Baltimore Cty.,* 713 F.3d 723, 731 (4th Cir. 2013).  The following test is used to determine whether a defendant is entitled to qualified immunity: (1) taken in the light most favorable

to the party asserting the injury, do the facts alleged show the defendant's conduct violated a constitutional right; and (2) was that right clearly established such that a reasonable person would have known that their conduct was unlawful. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538-39 (4th Cir. 2017). A defendant is "entitled to a qualified immunity defense so long as 'the law did not put the [defendant] on notice that his conduct would be clearly unlawful.' " *See Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Henry v. Purnell,* 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

Because Plaintiff has failed to demonstrate any violation of a clearly established federal constitutional right herein, the undersigned further proposes that the presiding District Judge **FIND** that Defendants are entitled to qualified immunity on each of the federal claims alleged against them.

## I.     Plaintiff's motion for leave to amend complaint.

As addressed in each section above, the undersigned proposes that the presiding District Judge **FIND** that, even taking into consideration the allegations contained in the proposed amended complaint contained in ECF No. 68-1, Plaintiff has failed to state any plausible federal constitutional claim against Defendants. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's proposed amended complaint would also be subject to dismissal and, therefore, granting such amendment would be futile. Consequently, his motion for leave to amend complaint (ECF No. 68) should be denied.

## III.    RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Motion to Dismiss filed by Defendants Jividen,

Ames, Wilson, and McGraw (ECF No. 41), **DENY** Plaintiff's Motion to Amend Complaint (ECF No. 68), **DECLINE** to exercise supplemental jurisdiction over Plaintiff's state law negligence claims pursuant to 28 U.S.C. § 1367(c), and **DISMISS** this matter from the docket of the court. Additionally, because the virtually identical complaint in Case No. 2:20-cv-00299 was consolidated with this civil action, it is further respectfully **RECOMMENDED** that the presiding District Judge also **DISMISS** Case No. 2:20-cv-00299 as well.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties and Chief Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

February 28, 2023

Dwane L. Tinsley
United States Magistrate Judge